IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LMD RESIDENTIAL, INC. | § § § | |
| *Plaintiff* | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-cv-25 |
| SLSCO, LP, KELLY HUCK, and HUCK CONSULTING GROUP, LLC | § § § § | JURY TRIAL DEMANDED |
| *Defendants* | § § | |

### PLAINTIFF LMD RESIDENTIAL, INC.'s ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff LMD Residential, Inc. ("LMD" or "Plaintiff") complaining of Defendants SLSCO, LP ("SLS"), Kelly Huck, and Huck Consulting Group, LLC ("Huck Consulting") and for cause of action would respectfully show the Court as follows:

### I.
### PARTIES

1. Plaintiff LMD Residential, Inc. is a New York corporation with its principal place of business in Brooklyn, New York.

2. Defendant SLSCO, LP is a Texas limited partnership with its principal place of business in Galveston, Texas and may be served with process by serving its registered agent, Incorp Services, Inc., at 815 Brazos St., Suite 500, Austin, Texas 78701 or wherever its registered agent may be found.

1

3. Defendant, Kelly Huck, is a natural person and a citizen of the state of Texas. Mr. Huck is the Owner and Chief Executive Director of Huck Consulting Group, LLC. A copy of the Original Complaint may be served on him by registered mail at the offices of Huck Consulting Group, LLC, 3513 Juniper Rim Rd., Leander, Texas 78641.

4. Defendant, Huck Consulting Group, LLC, is a Texas limited liability company with its principal place of business in Leander, Texas. It may be served with process by serving its registered agent, Kelly Huck, at 3513 Juniper Rim Rd., Leander, Texas 78641 or wherever its registered agent may be found.

## II.
## JURISDICTION AND VENUE

5. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties as LMD is a citizen of New York while SLS, Huck, and Huck Consulting are citizens of Texas. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction, both general and specific, over SLS, Huck, and Huck Consulting as they are citizens of Texas.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because SLS resides in this district while Huck and Huck Consulting are both Texas residents.

## III.
## STATEMENT OF FACTS AND ALLEGATIONS

8. In April 2014, the City of New York (the "City"), through the Commissioner of the Department of Design and Construction, contracted SLS to serve as the Construction

2

Manager of the CM/Design/Build for Hurricane Sandy Residential Community Recovery Program in the Boroughs of Staten Island, Brooklyn, and Queens, New York (the "Project"). The Project, part of the broader Hurricane Sandy Residential Community Recovery Program, aimed to restore homes for families affected by the hurricane.

9. SLS, in turn, subcontracted LMD, a small residential construction company, to handle the rehabilitation, reconstruction, and elevation of homes within the Project. This included providing all labor and materials required to complete the work. SLS awarded LMD the contracts in May 2017 and LMD promptly commenced work the next month.

10. Kelly Huck was the Housing Division President of SLS during the Project. In January 2020, Mr. Huck formed Huck Consulting. Throughout the Project, Mr. Huck, acting through SLS and Huck Consulting, served as LMD's main point of contact to SLS for the Project.

11. From the Project's inception, challenges arose resulting in continuous adjustments to LMD's scope of work. These adjustments required LMD to perform additional work outside of LMD's original scope, necessitating the submission of change orders.

12. Although SLS initially paid certain change orders, many change order requests were ignored for over two years. Throughout the Project, Mr. Huck, acting on behalf of SLS and Huck Consulting, instructed LMD to continue its work under the false assurance that LMD's change orders would be approved and paid.

13. Despite the ignored change orders, LMD continued its work committed to the Hurricane Sandy recovery goal. This included LMD continuing to pay all workers and

3

subcontractors and substantially completing its scope of work on the Project. In fact, despite the outstanding change orders, Mr. Huck and SLS threatened to terminate LMD on several occasions if LMD did not continue its work on the Project, including work outside of LMD's original scope. *See* Anticipatory Breach Notice Letter, attached hereto as **Exhibit A**.

14. Moreover, as the Project progressed, LMD was forced to comply with various unexpected rules and regulations set in place by government agencies, resulting in LMD completing additional work that was not contemplated in its contract with SLS. Again, LMD submitted change orders for this additional work.

15. Even worse, instead of settling the outstanding change orders or advancing funds to LMD, Mr. Huck attempted to coerce LMD into taking out additional loans so that it could pay all subcontractors and continue to progress work on the Project.

16. Throughout the Project, LMD was given conflicting instructions on how to handle change order claims. After submitting a number of initial change order requests, SLS instructed LMD to convert the change orders to contract amendments. LMD complied with SLS's request and promptly submitted the contract amendments. However, LMD was subsequently notified in May 2019 that the contract amendments needed to be converted back to change orders.

17. Despite all the aforementioned challenges, LMD persevered and successfully constructed over 90 residential homes within the three-year Project period. In SLS's own words, SLS "could not have accomplished [its] goals without this partnership and

commitment from LMD." *See* LMD Letter of Recommendation, attached hereto as **Exhibit B**.

18. By the time LMD had substantially completed the work, LMD had a total of $5,230,000.00 in outstanding change order requests related to work performed outside of its contracted scope of work. Furthermore, following LMD's completion of the Project, LMD continued to perform warranty work on the Project at the request of SLS.

19. LMD subsequently discovered that SLS failed to properly execute and timely submit LMD's change orders to the City—a critical fact deliberately concealed by Mr. Huck and SLS. In fact, SLS did not even submit the change order requests to the City until nearly a year after LMD substantially completed the Project. *See* DDC Denial Letter, attached hereto as **Exhibit C**.

20. Despite LMD completing the work over two years ago, SLS refuses to fulfill its payment obligation to LMD, leaving an outstanding balance of $5,230,000.00 for the completed work.

## IV.
## CAUSES OF ACTION

*FIRST CLAIM FOR RELIEF - QUANTUM MERUIT*
*(Against SLS)*

21. LMD incorporates the foregoing paragraphs as if fully set forth herein.

22. To recover under a quantum meruit claim, a plaintiff must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged; and (4) the person sought to be charged was reasonably notified that the plaintiff

performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018). Under Texas law, "extra work" in construction cases, as may be recoverable by quantum meruit, is work arising outside and independent of the contract. *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 402 (N.D. Tex. 2016), aff'd as modified and remanded, 725 Fed. Appx. 256 (5th Cir. 2018).

23. LMD provided work and materials outside the scope of LMD and SLS's agreement in the amount of $5,230,000.00. SLS accepted LMD's work and was notified that LMD expected to be paid for such work. Nevertheless, SLS failed to pay LMD for its work.

24. LMD hereby seeks and is entitled to recover from SLS the reasonable value of the work performed and materials provided for the Project.

*SECOND CLAIM FOR RELIEF – PROMISSORY ESTOPPEL*
*(Against SLS)*

25. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

26. To assert a promissory estoppel claim, a plaintiff must prove: (1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; and (4) injustice that can be avoided only by enforcement of the promise. *Kew v. Bank of Am., N.A.*, No. CIV.A. H-11-2824, 2012 WL 5832354, at *5 (S.D. Tex. Nov. 16, 2012).

27. SLS promised to pay LMD for work performed outside of LMD's contract

scope and had actual knowledge that LMD would rely on such promises. LMD relied on these promises to its detriment by performing all work requested by SLS. However, LMD was not paid for such work and has suffered damages as a result.

28. The injustice suffered by LMD may only be avoided by the enforcement of SLS's promises. Thus, LMD hereby seeks and is entitled to recover its reliance damages and all other relief to which it may be justly entitled.

*THIRD CLAIM FOR RELIEF – FRAUD & FRAUDULENT MISREPRESENTATION*
*(Against SLS, Kelly Huck, and Huck Consulting)*

29. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

30. A fraud cause of action requires the plaintiff to show evidence of: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *United States v. Lacy*, 234 F.R.D. 140, 148 (S.D. Tex. 2005).

31. Furthermore, when a party fraudulently procures a contract by making a promise without any intent of keeping the promise in order to induce another into executing the contract, a cause of action for that fraud exists. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 52 (Tex. 1998).

32. SLS, Kelly Huck, and Huck Consulting knowingly and falsely represented to LMD that it would be paid for work performed outside of LMD's original scope of work. Defendants intended LMD to rely on such misrepresentations, and even threatened to

terminate LMD if it failed to comply with their requests. For example, in an "Anticipatory Breach Notice & Opportunity to Cure" letter dated June 30, 2018, SLS threatened to terminate LMD if LMD failed to timely perform phase three of the Project. *See* **Exhibit A**.

33. Further, Mr. Huck continuously promised LMD that the change order requests were being processed and would be paid. However, LMD has since learned that the change order requests were not even submitted to the City until nearly a year after LMD had completed its work.

34. LMD relied on Defendants' misrepresentations to its detriment by continuing to perform the work and performing work outside of its scope. As a result of such misrepresentations, LMD has suffered damages.

35. Accordingly, LMD hereby seeks to recover its actual and consequential damages, exemplary damages in an amount to be determined by the jury, and all other relief to which it may be justly entitled.

*FOURTH CLAIM FOR RELIEF - FRAUDULENT INDUCEMENT*
*(Against SLS, Kelly Huck, and Huck Consulting)*

36. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

37. Under Texas law, elements for fraudulent inducement are the same as those for fraud, namely (1) a material misrepresentation; (2) that is false and made with knowledge of its falsity or recklessness as to its truth; (3) made with the intention that it should be acted upon by another party; (4) relied upon by the other party; and (5) causing injury. *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709

(S.D. Tex. 2004).

38. As explained above, SLS, Kelly Huck, and Huck Consulting knowingly and falsely represented to LMD that it would be paid for work performed outside of LMD's scope of work, and even threatened to terminate LMD if it failed to comply with their requests. LMD relied on these misrepresentations and performed the requested additional work. As a result, LMD has suffered damages.

39. Accordingly, LMD hereby seeks to recover its actual and consequential damages, exemplary damages in an amount to be determined by the jury, and all other relief to which it may be justly entitled.

*FIFTH CLAIM FOR RELIEF – UNJUST ENRICHMENT*
*(Against SLS)*

40. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

41. Unjust enrichment is an equitable theory of recovery that is based on an implied agreement to pay for benefits received. *See Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). To recover under unjust enrichment, a plaintiff must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Jupiter Enterprises, Inc v. Harrison*, No. 05-00-01914-CV, 2002 WL 318305, at *3 (Tex.

App.—Dallas Mar. 1, 2002, no pet.).

42. LMD provided valuable services to SLS in furtherance of the Project. SLS accepted and benefited from LMD's work, and at all relevant times was aware that LMD expected to be compensated for such work.

43. SLS has been unjustly enriched in an amount not less than $5,230,000.00 by retaining the benefit of the labor and materials LMD provided to the Project. SLS is therefore liable to LMD under a theory of unjust enrichment as it would be inequitable for SLS to retain the benefit of LMD's work without paying LMD.

*SIXTH CLAIM FOR RELIEF - VIOLATIONS OF THE PROMPT PAY ACT*
*(Against SLS)*

44. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

45. SLS, pursuant to Texas Government Code § 2251.022, was required to pay LMD not later than the 10th day after the date it received payment from the City.

46. SLS violated the Texas Prompt Payment Statute pursuant to Chapter 2251 of the Texas Government Code by failing to promptly pay LMD. The City has not given written notice to SLS nor to LMD of any deficiencies in the labor or materials provided on the Project by LMD. Thus, SLS does not have a good faith basis for withholding payment owed to LMD for work properly performed on the Project.

47. Pursuant to Section 2251.022 of the Texas Government Code, and in addition to the amounts owed, LMD is entitled to interest as provided by Section 2251.025 on the unpaid amount since each payment became due. Furthermore, LMD is entitled to attorney's

fees and interest on the unpaid amounts in accordance with Section 2251.043 of the Texas Government Code.

*SEVENTH CLAIM FOR RELIEF - CONSPIRACY TO COMMIT FRAUD*
*(Against SLS, Kelly Huck, and Huck Consulting)*

48. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

49. To establish a civil conspiracy to commit fraud, the plaintiff must establish (1) a combination of two or more persons; (2) seeking to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) having a meeting of minds on the object or course of action; (4) who commit one or more unlawful, overt acts; (5) proximately resulting in damages. *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 697 (S.D. Tex. 2014), aff'd, 582 Fed. Appx. 279 (5th Cir. 2014).

50. SLS, Kelly Huck, and Huck Consulting conspired to fraudulently induce LMD into performing work that LMD would not be paid for. Defendants did so by knowingly and falsely representing to LMD that it would be paid for such work, and even threatening to terminate LMD if it did not comply with their requests. LMD relied on Defendants' misrepresentations and performed such work.

51. Furthermore, SLS, Kelly Huck, and Huck Consulting conspired to fraudulently induce LMD into performing additional work by falsely assuring LMD that the outstanding change orders had been submitted to the City and would be paid. In reality, Defendants failed to properly execute and timely submit LMD's change orders to the City.

In fact, Defendants did not submit such change orders until nearly a year after LMD substantially completed the Project.

52. As a result, LMD has suffered damages and hereby seeks to recover its actual and consequential damages, exemplary damages in an amount to be determined by the jury, and all other relief to which it may be justly entitled.

### EIGHTH CLAIM FOR RELIEF – NEGLIGENCE
### (Against SLS)

53. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

54. The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

55. SLS owed LMD a duty to properly and timely execute the change orders related to LMD's extra work and ensure LMD received payment for all work performed on the Project. SLS breached its duty by negligently failing to properly and timely submit LMD's change orders to the City. As a direct and proximate result of SLS's breach of duty, LMD did not receive payment for its work, and has thereby suffered substantial damages.

56. LMD is therefore entitled to all damages proximately caused by SLS's negligence and all other relief to which LMD may be justly entitled.

### NINTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION
### (Against SLS)

57. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

58. The negligent-misrepresentation elements are: (1) the defendant made a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed "false information" for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653-54 (Tex. 2018).

59. SLS misrepresented to LMD that it would be paid for work performed outside of LMD's original scope of work on the Project. SLS had a pecuniary interest in the Project and failed to exercise reasonable care in communicating information to LMD related to LMD's work and compensation. LMD relied on SLS's misrepresentations to its detriment by continuing to perform the work and performing work outside of its original scope. However, LMD has not been paid for such work.

60. As a result of SLS's misrepresentations, LMD has incurred substantial damages. LMD is therefore entitled to all damages proximately caused by SLS's negligent misrepresentations and all other relief to which LMD may be justly entitled.

*TENTH CLAIM FOR RELIEF – ATTORNEY'S FEES*
*(Against SLS)*

61. LMD repleads, restates, and realleges the previous paragraphs as if set forth fully herein.

62. Due to the actions of SLS, LMD has been required to retain the services of the law firm of West Mermis, PLLC. LMD has agreed to pay West Mermis, PLLC a

reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 2251.043 of the Texas Government Code, LMD is entitled to an award of its reasonable attorney's fees against SLS in an amount to be established at trial.

## V.
## STATUTE OF LIMITATIONS TOLLED

63. Any statute of limitations related to the asserted or unasserted causes of action are tolled by the discovery rule, fraudulent concealment, equitable estoppel, and/or equitable tolling.

## VI.
## JURY DEMAND

64. LMD hereby requests a jury trial on all issues triable by jury in this case.

## VII.
## CONDITIONS PRECEDENT

65. LMD hereby alleges that all conditions precedent to its recovery have occurred.

## PRAYER FOR RELIEF

WHEREFORE, in addition to the relief requested elsewhere herein, LMD requests that:

A. Judgment against Defendants for the causes pled herein;

B. Judgment awarding LMD its damages, including its actual and consequential damages, exemplary damages, and all other damages to which it may be justly entitled;

C. Judgment awarding LMD such attorney's fees incurred in this matter under

Texas Government Code Section 2251.043;

D. Judgment awarding LMD pre-judgment and post-judgment interest in the amount allowed by law;

E. Judgment awarding LMD all costs of court; and

D. Such other relief, legal or equitable, to which LMD may be entitled.

Respectfully submitted,

**WEST MERMIS, PLLC**

By:   */s/ Joshua W. Mermis*
    Joshua W. Mermis
    Attorney-in-Charge
    Texas Bar No. 24039055
    Federal Bar No. 37504
    Stephen A. Dwyer
    Texas Bar No. 24108599
    Federal Bar No. 3552427
    1301 McKinney, Suite 3120
    Houston, Texas 77010
    (713) 255-3550 - Telephone
    (713) 255-3551 - Facsimile
    jmermis@westmermis.com
    sdwyer@westmermis.com

    **ATTORNEYS FOR PLAINTIFF**
    **LMD RESIDENTIAL, INC.**